IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

    Plaintiff,

v.

PILOT AIR FREIGHT, LLC,

    Defendant.

CIVIL ACTION FILE NO.
1:21-cv-03936-MLB-LTW

## <u>ORDER</u>

This matter appears before the Court on a Motion to Compel Production of Documents filed by Defendant Pilot Air Freight, LLC ("Pilot"). [Doc. 95]. Also pending is a Motion for Protective Order Quashing Subpoena filed by Plaintiff Equal Employment Opportunity Commission ("EEOC") ([Doc. 97]), and the EEOC's request pursuant to Rule 612(a)(1), (b) for production of a four-page document that was referenced during the deposition of Defendant's Chief Executive Officer, Zach Pollack. [See Docs. 88, 92]. The EEOC also requests that the Court conduct an *in-camera* inspection of the Notes.

## I.  <u>BACKGROUND</u>

The EEOC filed this employment discrimination action against Pilot on September 24, 2021. [Doc. 1]. The EEOC filed an Amended Complaint, which is the

operative pleading in this case, on December 20, 2021, alleging that Pilot violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* [Doc. 12]. The ADA claims asserted in the Amended Complaint were brought by the EEOC on behalf of Thomas Hunt, a former employee of Pilot. [Id.]. Hunt was allegedly hired by Pilot on or about April 22, 2019 and was terminated on or about June 27, 2019. [Id. at 4-5]. The Complaint alleges that Hunt has a disability, that his health benefits were set to begin on July 1, 2019, less than a week after his termination, and that Pilot deprived Hunt of equal employment opportunities and adversely affected his status as an employee because of his disability. [Id. at 4-7]. Although the period of discovery was originally set to end on April 28, 2022, the Court has granted numerous extensions of discovery. [Docs. 9, 37, 53, 65, 90, 94, Docket Entry dated March 16, 2023]. For approximately a year, the parties have been involved in many disputes regarding discovery. [Docs. 38, 67, 75, 85, 88, 92, 94, 100, 101, 106]. This case is before the Court on yet another round of discovery disputes.

## II.   **DISCUSSION**

### A.   **Defendant Pilot's Motion to Compel**

Pilot moves the Court for an order compelling the EEOC to fully respond to Pilot's request for production of documents. [Doc. 95]. After the EEOC filed a Response [Doc. 99], Pilot acknowledged in its Reply that much of its requested relief

is moot [Doc. 105-1 at 2]. Pilot states that the only requested relief remaining is production of the unredacted version of the investigation notes from EEOC Investigator Mark Maddox and "the unredacted documents previously produced but not previously identified on the EEOC's privilege log." [Doc. 105-1 at 5].

Pilot argues that it is entitled to the complete unredacted investigation notes from Maddox. [Doc. 105-1 at 5-6]. It appears the EEOC has provided Pilot with Investigator Maddox's notes, but redacted two lines pursuant to the statutory conciliation privilege. [Doc. 99-1 at 5-6]. Pilot argues that "it is imperative that the EEOC produce the entire, unredacted version of Maddox's Investigation Notes so Pilot can understand the contours of his investigation." [Doc. 105-1 at 6; Doc. 95 at 2-3, 5-6]. Pilot contends the EEOC was obligated to produce the unredacted notes pursuant to Request for Production ("RFP") No. 21, which asks for "All documents relating to the allegations made in the Complaint or Hunt's EEOC Charge of Discrimination not specifically requested elsewhere." [Doc. 95 at 2-3]. The EEOC, however, asserts that it "objected to RFP No. 21 in total and has never wavered from that position." [Doc. 99-1 at 5; Doc. 99-2, Mills Declaration ("Dec.") ¶ 11; Doc. 99-6 at 4].

Pilot also argues that it is entitled to unredacted third-party communications. [Doc. 105-1 at 7-8]. Specifically, Pilot references emails between Thomas Hunt and non-party Aaron Hunt, and emails between Thomas Hunt and non-party Roy Kok. [Id.

3

at 8].   The EEOC asserted in its Supplemental Privilege Log that the emails are "protected from disclosure by the government deliberative process privilege." [Doc. 105-4 at 14-15].  Pilot argues that the "documents are not protected by this privilege and full, unredacted versions of the documents should be produced." [Doc. 105-1 at 7].

Under the Federal Rules of Civil Procedure, if an opposing party fails to comply with discovery requests, the moving party may seek a motion to compel discovery responses.  Fed. R. Civ. P. 37(a)(1).  More specifically, Rule 37(a)(3)(B) states that said motion may be used to compel discovery when a party fails to answer an interrogatory or fails to produce documents.  If the Court finds that a party faltered in its discovery obligations, the Court has discretion, under Rule 37(a), to compel appropriate discovery responses.  Fed. R. Civ. P. 37(a)(1); see Commercial Union Ins. Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984) ("Case law states that a motion to compel discovery is committed to the discretion of the trial court . . . .").  In ruling on a motion to compel discovery, the Court may grant the motion in whole, deny the motion in whole, or grant the motion in part and deny the motion in part.  Fed. R. Civ. P. 37(a)(5).

Before filing a motion to compel discovery pursuant to Rule 37(a), the party, without court action, must make a good faith effort to attempt or actually confer with

the other party in an effort to obtain the desired material.  Fed. R. Civ. P. 37(a)(1).  The motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the . . . party failing to make disclosure or discovery[.]"  Id.  Under Local Rule 37.1, a motion to compel discovery must also "quote verbatim each disclosure, interrogatory, deposition question, request for designation of deponent, or request for inspection to which objection is taken," "state the specific objection," "state the grounds assigned for the objection," and "cite authority and include a discussion of the reasons assigned as supporting the motion." LR 37.1(A), NDGa.

In addition, the Court issued a Scheduling Order on January 3, 2022, which provided the parties with guidelines and detailed instructions regarding discovery practice.  [Doc. 18 at 6-9].  The Scheduling Order included the following instructions:

> Counsel or *pro se* litigants are required to confer, by telephone or in person, in good faith before bringing a discovery dispute to the Court.  See Fed. R. Civ. P. 26(c)(1) and 37(a)(1); LR 37.1A(1), N.D. Ga.  The duty to confer is NOT satisfied by sending a written document, such as a letter, email, or fax, to the adversary unless repeated attempts to confer by telephone or in person are met without success due to the conduct of the adversary.

[Id. at 8].  The Scheduling Order specifically stated that if the parties were "unable to informally resolve the discovery dispute, they should arrange a conference with the Court through the courtroom deputy or law clerk."  [Id.].  The Order also explained

that if the parties' discovery "dispute cannot be resolved during the conference, the Court will direct further proceedings." [Id.]. Finally, the Scheduling Order noted, "Motions to compel or for a protective order should ordinarily not be filed without a prior conference with the Court." [Id.].

The Court finds that Pilot's Motion to Compel should be denied because the Motion is procedurally improper for numerous reasons. As previously noted, Rule 37 requires a party filing a motion to compel to "include a certification that the movant has in good faith conferred or attempted to confer with the . . . party failing to make disclosure or discovery[.]" Fed. R. Civ. P. 37(a)(1). Pilot's Motion to Compel does not include any certification that counsel for Pilot conferred or attempted to confer in good faith with the EEOC's counsel before filing the motion. [Doc. 95]. Because Rule 37 provides that a motion to compel "must include" such a certification, Pilot's Motion is improper and cannot be granted. Fed. R. Civ. P. 37(a)(1); accord Samadi v. Bank of America, N.A., 476 F. App'x 819, 821 (11th Cir. 2012) ("The district court was not required to grant Samadi's motion to compel when he failed to certify that he had conferred in good faith with counsel for the Bank, Fed.R.Civ.P. 37(a)(1)."); Piccard v. Deedy, No. 1:21-CV-558-MLB, 2021 WL 4846132, at *11 (N.D. Ga. Oct. 15, 2021).

Furthermore, as discussed *supra*, the Court's Scheduling Order specifically stated that the parties "are *required* to confer, by telephone or in person, in good faith

before bringing a discovery dispute to the Court," and the "duty to confer is NOT satisfied by sending . . . [an] email, . . . unless repeated attempts to confer by telephone or in person are met without success due to the conduct of the adversary." [Doc. 18 at 8 (emphasis added)].  There is no evidence that Pilot either conferred or made repeated attempts to confer by telephone or in person before filing the present Motion to Compel.  The EEOC has averred that Pilot did not engage in good faith efforts to resolve the discovery dispute before moving to compel.  [Doc. 99-2, Mills Dec. ¶¶ 5-8].  In fact, documents attached to Pilot's Motion to Compel reveal that counsel for Pilot merely sent the EEOC's counsel a couple of emails in mid-November 2022 addressing the disputed discovery issues and concluded an email dated November 17, 2022, with the following: "We prefer not to have to file a motion to compel today or tomorrow."  [Doc. 95-4 at 1].  Instead of conferring in person or by telephone, Pilot filed the Motion to Compel the following day.  [Doc. 95].

Pilot also did not comply with the Scheduling Order's directive to "arrange a conference with the Court" in situations where the parties are "unable to informally resolve the discovery dispute."  [Doc. 18 at 8].  There is no indication that Pilot contacted the undersigned to set up a conference with the Court.  As the Scheduling Order stated, if Pilot had arranged such a conference and if the discovery dispute had not been resolved at that time, the undersigned would have directed further

proceedings. [Id.]. Finally, Pilot did not obey Local Rule 37.1 by including in its Motion to Compel "the specific objection" and "the grounds assigned for the objection." LR 37.1(A), NDGa.

For all these reasons, the undersigned finds that Defendant Pilot's Motion to Compel is procedurally improper. Pilot violated the applicable Federal and Local Rules, as well as the undersigned's Scheduling Order. Pilot, as previously noted, "wholly failed to attempt, in good faith, to confer with [the] opposing party before filing [the] motion to compel, therefore justifying the Court's denial of the motion." Lamar v. Clayton County Sch. Dist., No. 1:13-CV-1600-RLV-ECS, 2013 WL 12177812, at *2 (N.D. Ga. Nov. 6, 2013). In addition, Pilot did not attach to the Motion the required certification, it did not contact the undersigned and arrange a conference to address the discovery dispute, and it did not specify the objection, or the grounds assigned for the objection. The Court, therefore, **ORDERS** that Defendant Pilot's Motion [Doc. 95] to Compel is **DENIED**. See Gay v. AirTran Airways, Inc., 427 F. App'x 743, 744-45 (11th Cir. 2011) (holding that district court did not abuse discretion in denying pro se plaintiff's motion to compel discovery for failure to comply with local rules); Jireh, Inc. v. Champa, No. 1:18-CV-3076-AT, 2021 WL 8567907, at *2-3 (N.D. Ga. July 28, 2021) (denying motion to compel for failure to comply with Federal Rules, Local Rules, and the Court's Standing Order).

**B.**   <u>**Plaintiff EEOC's Motion for a Protective Order**</u>

The EEOC has filed a Motion for a Protective Order asking the Court for an order quashing Pilot's subpoena for the deposition of EEOC Investigator Mark Maddox.   [Doc. 97].   Pilot deposed Maddox on November 3, 2022, but after approximately two and half hours, the EEOC terminated the deposition to seek a protective order.   [Doc. 97-7 at 164-66].   On the next day, November 4, 2022, the Court held a discovery hearing and the EEOC orally motioned to quash the remainder of Maddox's deposition.   [Doc. 88, Minute Entry].   The undersigned directed the EEOC to file a brief explaining why it believes certain questions posed to Maddox are protected by the deliberative process privilege.   [Doc. 88, Minute Entry].   The undersigned also directed Pilot to file a brief explaining why its questions to Maddox are not subject to the deliberative process privilege.   [<u>Id.</u>].   The parties agreed to a briefing schedule for the EEOC's motion to quash and for a protective order.   [Docs. 89, 90].   Per the terms of the schedule, the EEOC's opening brief [Doc. 97] was filed on November 25, 2022, Pilot's response [Doc. 104] was filed on December 9, 2022, and the EEOC's reply [Doc. 107] was filed on December 23, 2022.

Rule 26 of the Federal Rules of Civil Procedure defines the scope of discovery for civil matters.   Specifically, Rule 26 provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter

> that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b). Although the scope the discovery is broad, it is not without limitation. Pursuant to Rule 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending–or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . ." Fed. R. Civ. P. 26(c)(1)(D). The movant bears the burden of proof to show that the protective order is justified. In re Alexander Grant & Co. Litigation, 820 F.2d 352, 356 (11th Cir. 1987). This burden must be met with "a particular and specific demonstration of fact," not "stereotyped and conclusory statements." United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) (internal citations omitted).[1] "Rule 26(c) gives the district court

---

[1] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent, all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

discretionary power to fashion a protective order." Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1548 (11th Cir. 1985). In addition, Rule 45 provides, in part: "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."[2] Fed. R. Civ. P. 45(d)(3)(A).

The EEOC argues that the subpoena for the continued deposition of Maddox seeks multiple types of privileged or protected matter. [Doc. 97-1 at 6]. According to the EEOC, the subpoena seeks information subject to the deliberative process privilege [Id. at 7-16], confidential information from other discrimination charges [Id. at 16-18], and statutorily protected conciliation materials [Id. at 18-21]. The EEOC also contends that the subpoena subjects Maddox and the EEOC to undue burden. [Id. at 21-24]. For a number of reasons, the Court finds that the EEOC has carried its burden of showing

---

[2]  As previously noted, the EEOC orally motioned to quash the remainder of Maddox's deposition at the discovery hearing and the Court explained that it was permitting the EEOC to file a brief in support thereof. Moreover, the EEOC sought a protective order within two days after service of Pilot's subpoena. [Doc. 97-4]. For these reasons, the undersigned finds that Plaintiff's motion for an order quashing the subpoena is "timely" under Rule 45(d)(3)(A). See Harris v. Chapman, 97 F.3d 499, 506 (11th Cir. 1996) ("District judges are accorded wide discretion in ruling upon discovery motions, and appellate review is accordingly deferential.").

that a protective order is justified by pointing to specific questions posed to Maddox during the deposition that sought privileged information.

The purpose of the deliberative process privilege "is to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp., 376 F.3d 1270, 1277 (11th Cir. 2004). "To fall within the deliberative process privilege, a document must be both 'predecisional' and 'deliberative.'" Id. (citing Department of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001)). "A 'predecisional' document is one prepared in order to assist an agency decision-maker in arriving at his decision and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id. (citation omitted). "A document is 'deliberative' if the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and, thereby, undermine the agency's ability to perform its functions." Id. at 1278.

"[T]he Supreme Court has held that if, looking at the deliberative process as a whole, data can be deemed advice or opinion, it is necessarily deliberative." Florida House of Representatives v. U.S. Dep't of Commerce, 961 F.2d 941, 949 (11th Cir.

1992).  "The only inquiry that should be made in deciding whether something should be denoted opinion, and hence deliberative, is: Does the information reflect the give-and-take of the consultive process?"  Id. (citations omitted). "The deliberative process privilege protects the quality of the government agency's decision-making process," including analysis, reasoning, and strategy.  Engberg v. U.S. Dep't of Justice, No. 8:10-CV-1775-T-23MAP, 2011 WL 4502079, at *4 (M.D. Fla. Aug. 12, 2011), report and recommendation adopted, No. 8:10-CV-1775-T-23MAP, 2011 WL 4501388 (M.D. Fla. Sept. 27, 2011).  Courts have applied the deliberative process privilege to the testimony of EEOC investigators.  See Hinton v. Alabama State Univ., No. 2:18-CV-994-RAH-JTA, 2020 WL 11273045, at *4 (M.D. Ala. Mar. 13, 2020); E.E.O.C. v. Venator Grp., No. 99 CIV 4758 AGS, 2000 WL 1059033, at *2 (S.D.N.Y. Mar. 27, 2000).

As noted *supra*, in a discovery hearing held on November 4, 2022, the undersigned directed the parties to address the issue of whether certain questions posed to EEOC Investigator Mark Maddox during his deposition are privileged.  [Doc. 88, Minute Entry].  The EEOC argued that the following questions are subject to the deliberative process privilege because they sought disclosure of opinions: "Did you make any determination about Mr. Hunt's credibility during the investigation?" [Doc. 97-1 at 10, Maddox Dep. at 127]; "Did you make any determination about April Hunt's

credibility during the investigation?" [Id.]; "Would the credibility of April Hunt be important in this investigation, based on the fact that - - you had a lot of calls with her during the investigation?" [Doc. 97-1 at 10, Maddox Dep. at 127-28]; "[I]s determining the credibility of April Hunt important in this investigation based on the fact that you spoke with her a lot during it and not so Mr. Hunt? Is it important?" [Doc. 97-1 at 10, Maddox Dep. at 128]; "What was your determination about Mr. Hunt's credibility?" [Doc. 97-1 at 10, Maddox Dep. at 129]; "What was your determination about April Hunt's credibility during this investigation?" [Id.]; "Generally, not in this investigation, is a charging party's employment background relevant to investigation?" [Doc. 97-1 at 11, Maddox Dep. at 130]; "So if you knew that Mr. Hunt was terminated for poor performance and for sexual harassment from a second employer, is that relevant to your investigation of this charge?" [Doc. 97-1 at 11, Maddox Dep. at 133]; "In those situations where you've issued no cause, have any of them been ones where you are, like, disappointed that it ended up being no cause?" [Doc. 97-1 at 11, Maddox Dep. at 44-45]; "After the deliberative process is over, have you been disappointed in the result?" [Doc. 97-1 at 11, Maddox Dep. at 45]; "Afterwards, have you been disappointed in a no cause determination?" [Doc. 97-1 at 11, Maddox Dep. at 46]. In its brief, the EEOC explained why it believed that these questions sought opinions and, therefore, were privileged. [Doc. 97-1 at 11-12].

14

The EEOC also argued that the following questions asked of Maddox were protected by the deliberative process privilege because they sought disclosure of strategy: "Have you ever been asked whether a lawsuit should be filed by the EEOC?" [Doc. 97-1 at 12, Maddox Dep. at 107]; "Have you ever been asked as the investigator whether a lawsuit should be filed by the EEOC?" [Doc. 97-1 at 12, Maddox Dep. at 108]; "So once you receive the position statement, what then happens?" [Doc. 97-1 at 12, Maddox Dep. at 54]; "After your review of the position statement, after review of any documents that may have been attached or offered by the respondent to you as the investigator, what do you do next?" [Id.]; "Did you see a copy of the complaint in this litigation before it was filed?" [Doc. 97-1 at 12, Maddox Dep. at 90]; "So you do not recollect seeing a copy of the complaint before it was filed?" [Doc. 97-1 at 13, Maddox Dep. at 90]; "You've answered—you've testified that you have not reviewed the allegations made—you have not reviewed the complaint; is that fair to state? You testified to that?" [Doc. 97-1 at 13, Maddox Dep. at 90-91]; "[W]hat possibility could happen next [after you and/or the EEOC finds reasonable cause in a particular cause charge generally]?" [Doc. 97-1 at 13, Maddox Dep. at 105]; "[I]f the EEOC files a lawsuit, what departments within the EEOC decide to file a lawsuit?" [Doc. 97-1 at 13, Maddox Dep. at 107].  The EEOC explained in its brief why it believed that these

questions asked of Maddox sought disclosure of strategy and, therefore, were privileged. [Doc. 97-1 at 13-14].

The EEOC next argued that the following questions were protected by the deliberative process privilege because they impermissibly sought disclosure of the EEOC investigator's reasoning: "What prompts you to want to interview others, not the charging party, as a part of an investigation?" [Doc. 97-1 at 15, Maddox Dep. at 63]; "When are those times that you would actually speak to an individual not a charging party?" [Doc. 97-1 at 15, Maddox Dep. at 64]; "Do you speak with individuals, not charging party, in the investigation just to get more information?" [Doc. 97-1 at 15, Maddox Dep. at 65]; "Is there any reason why you did not interview any of them?" [Doc. 97-1 at 15, Maddox Dep. at 161]; "Okay. Let me ask you a rude question. I'm sorry to ask this one. Could you have not interviewed these individuals just because you were too busy or you just didn't get around to it?" [Doc. 97-1 at 15, Maddox Dep. at 162]; "So if you were overworked and you couldn't get to it, you couldn't tell me that because of Mr. Mills' instruction [not to answer based on invocation of the deliberative process privilege]?" [Doc. 97-1 at 15, Maddox Dep. at 163]; "Do you look at the strength of the evidence [when making cause determinations]?" [Doc. 97-1 at 15, Maddox Dep. at 109]; "What factors do you consider whether to issue a cause or a no cause determination?" [Id.]; "As part of your

cause finding you just mentioned, did you determine the date—I'll call it the selection date—when Pilot included Mr. Hunt's name on an impact list for restructuring?" [Doc. 97-1 at 15, Maddox Dep. at 152]; "As an investigator, would you want to know the selection date when Mr. Hunt's name was put on the list for impact?" [Doc. 97-1 at 15, Maddox Dep. at 154]; "Mr. Maddox, what's important to decide a cause, with respect to finding a cause with respect to layoff?" [Doc. 97-1 at 15, Maddox Dep. at 155].  The EEOC then explained why it believed that these questions sought disclosure of the investigator's reasoning and, therefore, were protected by the deliberative process privilege.  [Doc. 97-1 at 16.  The EEOC also quoted many other specific questions posed to Maddox during his deposition and argued that the information sought in each of the questions was privileged.  [Id. at 16-18].

Although Pilot filed a response brief, it did not address any of the specific questions discussed by the EEOC.  [Doc. 104-1].  Instead, Pilot repeatedly stated that it "has a right to depose Maddox."  [Doc. 104-1 at 9-12].  This assertion is irrelevant to the issues before the Court because the EEOC did not argue that Pilot had no right to depose Maddox.  [Doc. 104-1 at 9-12].

Pilot also argued in its response brief that "the deliberative process does not act as a blanket privilege that prevents defendants in lawsuits filed by the EEOC from deposing EEOC investigators."  [Doc. 104-1 at 8].  Again, although this assertion is

true, it is not relevant.  The EEOC did not assert that the deliberative process privilege was a blanket privilege that prevented Pilot from deposing Investigator Maddox.  Pilot also offered the conclusory assertion that it "does not seek the information protected by the deliberative process." [Doc. 104-1 at 9-12].  But as the EEOC notes, Pilot did not explain why the specific questions identified by the EEOC did not seek information protected by the deliberative process privilege and other privileges.  [Doc. 104-1; Doc. 107 at 5-8].

Pilot's failure to respond to the EEOC's arguments regarding each question means that the motion is unopposed.  "[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."  Jones v. Bank of America, N.A., 564 F. App'x 432, 434 (11th Cir. 2014) (quoting Kramer v. Gwinnett County, Georgia, 306 F.Supp.2d 1219, 1221 (N.D. Ga. 2004) (internal quotation marks omitted)).  The EEOC's Motion for a Protective Order [Doc. 97] is due to be granted on this basis alone.

The Court also finds the merits of the EEOC's arguments to be persuasive.  In Brush v. Sears Holdings Corp., No. 09-81290-CIV, 2010 WL 11558010, at *2 (S.D. Fla. Sept. 2, 2010), the court found that the "EEOC's speculation that Defendant will seek information protected by the deliberative process privilege is no basis for blocking Defendant's deposition of its investigator."  But in the present case, the EEOC has not

engaged in speculation about what information Pilot seeks.  Rather, the EEOC has identified the *specific* questions that were *actually* posed to EEOC Investigator Maddox during his deposition.  And in the questions identified by the EEOC in its Motion for a Protective Order, counsel for Pilot repeatedly asked Maddox questions regarding strategy, reasoning, and his opinion on various issues such as the credibility of individuals and the relevancy and importance of certain information.  As previously noted, this type of information and testimony falls under the deliberative process privilege, and Pilot makes no argument to the contrary.  See Florida House of Representatives, 961 F.2d at 949; Engberg, 2011 WL 4502079, at *4.  Pilot's argument that it "has a right to depose Maddox" and its conclusory assertion that it "does not seek the information protected by the deliberative process" fail to address the specifics of the EEOC's motion.  [Doc. 104-1 at 9-12].

With regard to the conciliation privilege, the relevant statute provides that if the EEOC determines that there is reasonable cause to believe that a charge of discrimination is true, "the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."  42 U.S.C. § 2000e-5(b).  Moreover, the statute provides, in part, "Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent

proceeding without the written consent of the persons concerned.  Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both."  Id.  "[T]he prospect of disclosure or possible admission into evidence of proposals made during conciliation efforts would tend to inhibit the kind of free and open communication necessary to achieve unlitigated compliance with the requirements of Title VII."  Branch v. Phillips Petroleum Co., 638 F.2d 873, 881 (5th Cir. 1981).  "[D]isclosure of conciliation materials, even to the parties, would discourage negotiated settlement and frustrate the intention of Congress."  Id.

The Supreme Court has held that the appropriate scope of judicial review of the EEOC's conciliation activities "enforces the statute's requirements . . . in brief, that the EEOC afford the employer a chance to discuss and rectify a specified discriminatory practice—but goes no further."  Mach Mining, LLC v. E.E.O.C., 575 U.S. 480, 489 (2015).  The Second Circuit has explained that although "Mach Mining did not address the EEOC's obligation to investigate, . . . judicial review of an EEOC investigation is similarly limited."  E.E.O.C. v. Sterling Jewelers Inc., 801 F.3d 96, 101 (2d Cir. 2015). "The sole question for judicial review is whether the EEOC conducted an investigation."  Id.  As the EEOC notes, Pilot argues that it needs to continue deposing Maddox in order to determine whether the EEOC's investigation and conciliation

efforts were sufficient.  But as the court in <u>Sterling Jewelers</u> held, "[C]ourts may not review the *sufficiency* of an investigation—only whether an investigation occurred." <u>Id.</u>, 801 F.3d at 101 (emphasis in original) (citations omitted).

The Court also finds that disclosure of certain conciliation-related materials is not permitted.  The EEOC notes that on February 9, 2022, it inadvertently included in its initial production certain documents related to conciliation.  [Doc. 97-1 at 19].  The EEOC sent a clawback request related to these documents on March 7, 2022, pursuant to the Protective Order in this case.  [Doc. 97-9 at 3].  On the same day, counsel for Pilot wrote, "We confirm that we will delete/destroy the inadvertently produced documents."  <u>Id.</u>  A few days later, on March 10, 2022, Pilot requested an explanation and the EEOC responded by explaining that it was "prohibited by 42 U.S.C. sec. 2000e-5(b) from disclosing anything said during the conciliation process—even if that means disclosing communications back to the party who made them."  [Doc. 97-9 at 2].  More than three months later, on June 23, 2022, Pilot sent a letter to the EEOC demanding the production of numerous emails regarding conciliation and contending that the EEOC waived any privilege that could have applied.  [Doc. 97-10 at 2-4].  The EEOC requested clarification in a letter dated June 30, 2022, and offered a detailed explanation about why the conciliation-related documents were prohibited from disclosure.  [Doc. 97-11 at 2-4].  More than four months later, on November 3, 2022,

the date of Maddox's deposition, Pilot's proffered exhibits included the clawed back documents which were inadvertently produced and allegedly subject to the conciliation privilege.  [Doc. 97-6 at 2-3].  The EEOC stated that it would not consent to the use of the documents in Maddox's deposition and that it would not proceed with the deposition while the documents were in the exhibits folder.  [Id.].  Pilot agreed to pull the documents but stated that it disagreed with the EEOC's privilege assertion.  [Id.].

Pilot argues that the documents are not privileged, but asserts that even if they are privileged, the EEOC waived the privilege.  [Doc. 104-1 at 16].  The Court disagrees.  As the EEOC notes, 42 U.S.C. § 2000e-5(b) is a statutory prohibition against disclosure of conciliation-related materials.  [Doc. 97-1 at 20-21].  The EEOC argues that because there is no statutory allowance for waiver, the EEOC could not waive the conciliation privilege inadvertently.  [Id.].  Pilot has cited to no authority holding otherwise.  [Doc. 104-1 at 15-16].

The Court also finds that the continued deposition of Maddox imposes an undue burden on the EEOC.  As the EEOC notes, Pilot offered no argument in opposition to the EEOC's contention that the resumption of Maddox's deposition places an undue burden on the EEOC.  [Doc. 97-1 at 1, 21-24; Doc. 104-1 at 16-17; Doc. 107 at 5-6].  This section of the EEOC's motion is, therefore, unopposed.  See Hinton v. Alabama State Univ., No. 2:18-CV-994-RAH-JTA, 2020 WL 11273045, at *4 (M.D. Ala. Mar.

13, 2020); <u>EEOC v. Venator Group</u>, No. 99 CIV 4758 AGS, 2000 WL 1059033 (S.D.N.Y. Mar. 27, 2000) (not allowing deposition of EEOC investigators).

Based on the foregoing reasons and cited authority, the Court **ORDERS** that the EEOC's Motion [Doc. 97] for a Protective Order is **GRANTED** and the subpoena issued to EEOC Investigator Mark Maddox is **QUASHED**. <u>See Hinton</u>, 2020 WL 11273045, at *4; <u>U.S. E.E.O.C. v. Pinal County</u>, 714 F. Supp. 2d 1073, 1077-79 (S.D. Cal. 2010).

### C.    <u>Plaintiff EEOC's Request for Production of the Notes</u>

The EEOC requests that the Court compel Pilot to produce pursuant to Federal Rule of Evidence 612 a four-page document ("the Notes") allegedly used by Zach Pollock, the current Chief Executive Office ("CEO") and former Chief Operating Officer ("COO") of Pilot, prior to and during his remote deposition. Responding in opposition, Pilot argues the document sought by the EEOC is an attorney/client communication that contains attorney work product and is clearly marked as such on each of the four pages. [Doc. 92]. Pilot also contends that Pollock did not reference, review, or use the Notes in any way during his deposition.

Federal Rule of Evidence 612 provides that an adverse party is entitled to the production of a document if a witness uses the document to refresh his or her memory (1) while testifying or (2) before testifying, if the court in its discretion determines it is

necessary in the interests of justice.  See Fed. R. Evid. 612.  Application of Rule 612 requires the movant to meet three conditions before a document may be produced: "(1) the witness used the writing to refresh his memory; (2) the witness used the writing for the purpose of testifying; and (3) production is necessary in the interests of justice." Johnson v. Del Monte Fresh Produce Co., 2010 WL 3717337, at *4 (S.D. Fla. Sept. 17, 2010) (citations omitted).  "Rule 612 exists, in part, to 'safeguard against using the rule as a pretext for wholesale exploration of an opposing party's files and to insure that access is limited only to those writings which may fairly be said in fact to have an impact upon the testimony of the witness.'" Edwards v. Speedway, LLC, No. 18-23091-CIV, 2019 WL 13066871, at *1 (S.D. Fla. May 15, 2019) (citing Fed. R. Evid. 612 advisory committee's notes).  Rule 612 applies to documents reviewed in preparation for depositions as well as for trial testimony preparation. Medtronic XOMED, Inc. v. Gyrus Ent, LLC., No. 304CV400J32MCR, 2006 WL 786425 (M.D. Fla. March 27, 2006) (citing Sporck v. Peil, 759 F.2d 312, 327 (3rd Cir. 1985)) (noting that although Rule 612 is an evidence rule it is applicable to a deposition and deposition testimony by operation of Fed. R. Civ. P. 30(c)); In re Comair Air Disaster Litigation, 100 F.R.D. 350, 353 (D. Ky. 1983) (holding that Rule 612 applies to written materials reviewed by a witness prior to a deposition).

Although Rule 612 permits the opposing party to obtain a document used by a witness to refresh his or her recollection, "nothing in the Rule [should] be construed as barring the assertion of a privilege[.]" Fed. R. Evid. 612 advisory committee's notes. Thus, a litigant has the right to object to the production of a document and seek a court ruling on whether the interests of justice are met. Cf. Ross v. Sejin Am., Inc., No. 3:18-CV-537-RAH-JTA, 2021 WL 6973877, at *3 (M.D. Ala. Apr. 9, 2021) ("By failing to object to production, as was her right under Federal Rule of Evidence 612, [the] [p]laintiff . . . forfeited the option of asking the court to determine whether the interests of justice required the disclosure of her notes under Rule 612(a).") (citing Sporck, 759 F.2d at 317)).

"Even if the document consulted is privileged, the Court has discretionary power to determine whether a waiver has occurred." CMS Wireless, LLC v. Fid. & Deposit Co. of Md., No. 4:11CV00755 RTD, 2013 WL 12286172, at *4 (E.D. Ark. Mar. 11, 2013) (citing Fed. R. Evid. 612; McCormick on Evid. § 93 (6th ed.)); see also Valvoline Instant Oil Change Franchising v. RFG Oil, Inc., No. 12CV2079-GPC(KSC), 2014 WL 12026073, at *5 (S.D. Cal. May 20, 2014) (acknowledging that "[p]ursuant to Rule 612(a)(2), 'justice' may sometimes 'require the production of a document as to which the privilege has not been waived in order to permit adequate cross-examination.'")

(quoting In re Rivastigmine Patent Lit. (MDL No. 1661), 486 F. Supp. 2d 241, 243 (S.D.N.Y. 2007)).

The rule treats documents used *before* testifying and documents used *while* testifying differently.  "The amendment to Rule 612 reflects Congress' intent to treat the two situations differently." Balbiani v. Chester Pub. Util. Dist., Inc., No. 2:20-CV-2310-TLN-DMC, 2022 WL 3594385, at *8 (E.D. Cal. Aug. 23, 2022); Suss v. MSX Int'l Eng'g Servs., Inc., 212 F.R.D. 159, 163 (S.D.N.Y. 2002) (noting that while "courts have been grappling with the scope of Rule 612 with varying degrees of clarity[,]" "[t]he one area of agreement appears to be that the standard for production varies between Rule 612(1) and 612(2)").

"Whether to order production of materials referred to *before* testifying is within the Court's discretion after balancing the need for the material against the author's need to protect confidential information." Balbiani, 2022 WL 3594385, at *8 (citing Derderian v. Polaroid Corp., 121 F.R.D. 13 (D. Mass. 1988)); see also Edwards, 2019 WL 13066871, at *1 ("The production of a writing used to refresh a witness's recollection *prior to testifying* is left to the discretion of the district court in the interests of justice." (emphasis added)); Ferry v. BJ's Wholesale Club, No. CIV. 3:06CV226-C, 2007 WL 75375, at *3, n.1 (W.D.N.C. Jan. 8, 2007) ("As is clear from the rule, when

a document is used to refresh a deponent's memory *prior* to the deposition, a balancing test must be applied." (citing Fed. R. Evid. 612(2) (emphasis in original))).

Conversely, documents used by a witness *during* his or her testimony *must* generally be produced. See Suss, 212 F.R.D. at 163 ("[I]f the witness uses the document while testifying, it must be produced.").

In exercising their discretion, some courts:

have found that three conditions must be met before a party may obtain documents used by a witness prior to testifying: (1) the witness uses the writing to refresh his memory; (2) the witness uses the writing for the purpose of testifying; and (3) the court determines that production is necessary in the interest of justice.

Ross, 2021 WL 6973877, at *1 (citing Sporck, 759 F.2d at 317 and In re Managed Care Litigation, 415 F. Supp. 2d 1378, 1380 (S.D. Fla. 2006) (Moreno, J.)).   Courts "typically resolve the conflict by balancing the need for disclosure for effective cross-examination with the protection against disclosure afforded by relevant privileges." Id. Of course, other courts have employed other factors.  See Suss, 212 F.R.D. at 163 (observing that "the cases [applying Rule 612] do not provide a uniform analytical framework").

Finally, the burden is on the party seeking to compel production to show the applicability of Rule 612.  See Napolitano v. Omaha Airport Auth., No. 8:08CV299, 2009 WL 1740826, at *3 (D. Neb. June 15, 2009) ("[T]he burden is on the party

requesting production to show 'that the document actually influenced the witness's testimony.'" (quoting <u>Sporck</u>, 759 F.2d at 318)); <u>Lubritz v. AIG Claims, Inc.</u>, No. 217CV02310APGNJK, 2018 WL 10456239, at *2 (D. Nev. Apr. 18, 2018) ("The party seeking disclosure bears the burden of showing that disclosure is warranted.").

In this action, the EEOC agues the Court should order Pilot to produce the Notes for three reasons.  First, Rule 612(a)(1) compels production because Pollock used the notes as reference material while testifying.  Second, production is warranted under Rule 612(a)(2) because Pollock used the Notes to refresh his memory prior to testifying and justice requires the production.  Third, production is warranted regardless of Rule 612 because, just as at trial or in-person depositions, a witness may not testify using counsel-prepared notes withheld from adverse parties.

Pursuant to the EEOC's request, Pilot has provided the Notes to the Court for an *in camera* review.  [Attached hereto and filed Under Seal].  On review of the document at issue, the Court notes that every page of the four-page document is clearly marked as a privileged and confidential/attorney work product/attorney-client communication. [<u>Id.</u>].  The transmittal page is also clearly marked as confidential and was sent from Pilot's legal counsel to Pilot's CEO several days in advance of his deposition.  [<u>Id.</u>]. The document appears to have been prepared by Pilot's counsel in the course of performing legal duties on behalf of Pilot with an eye toward litigation.  Accordingly,

the Court is satisfied that a sufficient basis exists for Pilot's assertion that the document is an attorney-client communication that contains attorney work product which courts generally treat as sacrosanct and untouchable in discovery absent extraordinary reasons to the contrary.  See Fed. R. Civ. P. 26(b)(3).  Nonetheless, materials which have previously been deemed work product may be discoverable if the party seeking production establishes substantial need and undue hardship.  Fed. R. Civ. P. 26(b)(3)(A)(ii).  Absent a showing of substantial need and undue hardship, however, the EEOC is not entitled to Pilot's work product.

Because Pilot properly invoked the protections afforded a privileged document, the Court must decide whether Pollock took some action before or during his deposition to waive the protections afforded the privileged document and whether production of the Notes is necessary in the interests of justice or otherwise.  As noted above, the burden is on the party seeking production of a document pursuant to Rule 612 to show the rule's applicability.  Here, the EEOC has not met that burden.  For the reasons provided below, the undersigned finds that the EEOC has not established the three conditions that must be met before an adverse party is required to produce documents pursuant to Rule 612.

First, the Court will address condition number one, the witness used a writing to refresh his or her memory while testifying.  Despite the EEOC's arguments to the

contrary, there is no indication that Pilot's CEO relied on, or used the Notes to refresh his memory while testifying.  Instead, during his deposition Pollock made a passing reference to notes (the Notes) that were on his desk.  The relevant exchange, in part, is provided below:

> Q.   And do you recall when you received that first-round list of names?
>
> A.   Let's see. I probably -- I don't know offhand. Right around this time, I would guess; late May, very early June maybe. I think it was June 5th.
>
> Q.   June 5th of 2019, that's when you received his first round, Mr. Agnos's first round of selections?
>
> A.   I believe that is correct. Let me see. Let me double-check one thing to make sure. I actually have all of my communications shut off, so I'm just going to open up my e-mails here for a second so I can review one thing.
>
> Q.   And you said open up your e-mails. Are you talking about on your computer, or do you have it printed out?
>
> A.   On my computer. I don't have anything printed out really. **A few notes, but that's it.** I got the list from Christine on June 4th, 2019.
>
> Q.   You received the list from Christine on June 4th, 2019?
>
> A.   Correct.
>
> Q.   And you're looking at that list right now on your e-mail?
>
> A.   I am.

[Deposition of Pollock ("Pollock Dep.") at 66:15-67:16, Doc. 92-2] (emphasis supplied).

The EEOC's counsel continued to question Pollock about emails and other exhibits before circling back to ask Pollock about the document that he referenced earlier. [Id. at 67:17-74:8].

> Q.    So, Mr. Pollock, I will ask you, you referenced earlier that you had notes with you?
>
> A.    Yes.
>
> Q.    And is that one page or multiple pages?
>
> A.    Multiple pages.
>
> Q.    About how many pages?
>
> A.    Four pages.
>
> Q.    And do you have a scanner app on your phone?
>
> A.    I don't have my phone with me.
>
> Q.    Is it in another room?
>
> A.    Yeah.
>
> Q.    I will ask you to go ahead and scan those documents and drop them into the chat, please.

[Pollock Dep. at 74:9-22].

Before Pollock answered, Pilot's counsel asked Pollock if he was referring to

the notes that he took at the direction of counsel.  [Id. at 74:22].  Pollock responded

that "It's the privileged and confidential notes that you shared with me, Mary."  [Id. at

75:1-3].  Having heard Pollock's response regarding the Notes, Pilot's counsel directed

Pollock not to produce the Notes to the EEOC's counsel.  [Id. at 75:4-5].  Pilot's

counsel explained that despite Pollock's testimony that the Notes were provided to him

as CEO and were present on his desk, "he [had] not mentioned referencing them or

anything else, there's no basis for producing them because they are privileged."  [Id. at

76:6-12].  The EEOC's counsel disagreed and argued that if Pollock brought the Notes

with him to the deposition, the EEOC is entitled to examine and copy the Notes.  [Id.

at 78:14-21].  After a discussion between counsel for both parties regarding the Notes

and a request to the court reporter to read back to when the Notes were first mentioned,

the EEOC's counsel thought they should "continue with the deposition and address

[the Notes] at the end if defendant [was] going to continue to - -[was] going to stick by

the instruction not to produce."  [Id. at 78:22-79:1].  Pilot's counsel responded in the

affirmative and indicated that she was going to instruct Pollock not to produce the

Notes which she argued are privileged and confidential as well as attorney work

product.  [Id. at 79:2-5].  Pilot's counsel reiterated her argument that the witness had

not referenced the Notes and had only mentioned that they were sitting there on his

desk.  [Id. at 79:2-8].  Pilot's counsel maintained that if the EEOC persisted she would

instruct the CEO [Pollock] not to produce the Notes because the communication "contained both attorney work product as well as being an attorney/client communication." [Id. at 79:11-15].

After taking a short break for lunch, the EEOC's counsel noted on the record that there had not been much movement (presumably during the break) on either side regarding the production of the Notes, then he confirmed with Pilot's counsel that her decision to not produce the Notes was her final position.  [Id. at 128:21-24].   In response to the EEOC's inquiry, Pilot's counsel stated:

> Adam, you are correct. So that the record is clear, the documents to which Zach Pollock, the CEO of the company, referred is a four-page privileged work product document that was forwarded to him. He has not referenced it during this deposition or referred to the document during the deposition. It happens to be sitting on his desk. It is not something to which the Commission is entitled. That is our position.

[Id. at 129:3-12].  Once again, the EEOC's counsel noted his disagreement with defense counsel's position and reiterated his argument on the record that Pollock would not be entitled to the Notes if he was testifying at trial; that if Pollock showed up with the Notes, they would be entitled to them; and he pointed out that the Notes were the only document Pollock testified was physically printed out during the deposition.  [Id. at 129:15-21].  The EEOC's counsel also asserted that because Pollock testified that he had closed out of other communications and software, the EEOC was entitled to an inference that the Notes were there for remembrance.  [Id. at 129:21-24].  The EEOC

also contends that the Notes, which ostensibly relate to the deposition, could amount to unlawful coaching.  [Id. at 129:25-130:1-4].

As the parties were preparing to conclude Pollock's deposition, Pilot's counsel asked Pollock follow-up questions about the Notes.  Pollock was asked if he referenced, reviewed, or used the Notes to refresh his memory in any way during his deposition, and Pollock affirmed that he had not.[3]  [Id. at 156:15-157:12].  The EEOC's counsel then asked Pollock if he had ever read the Notes, when did he receive the Notes, and when did he print the Notes.  [Id. at 159:2-15].  Pollock stated that he read the Notes last week after he knew about his deposition; he did not know off hand when he received the Notes; and he believed he printed the Notes "last week" or "within the last

---

[3] The EEOC disputes that it was Pollock's own testimony that he did not use the Notes during his deposition and the Notes did not refresh his recollection.  Instead, the EEOC contends that the Pollock's responses were Pilot's counsel's post-coaching testimony. In support, the EEOC argues Pilot's counsel used leading questions that suggested answers and placed speaking objections on the record. The Court acknowledges that Pilot's counsel asked a few leading questions and placed speaking objections on the record.  The Court, however, disagrees with the EEOC's contention that Pollock's testimony was not his own.  Having reviewed Pollock's deposition, the Court notes that (1) the EEOC questioned Pollock at length using numerous exhibits; (2) Pollock's responses appear to be based on information provided in the EEOC's exhibits or topics related to the exhibits published by the EEOC; and (3) Pollock's responses were very detailed and appear to represent his own recollection and understanding of the facts instead of selected facts from defense counsel. Lastly, the Court notes that Pilot's counsel's speaking objections were based on a genuine and ongoing dispute between the parties about the production of a privileged document; a continued effort to shield the privileged document from disclosure; and an effort to preserve the record for a resolution of the issue by the Court.

few workdays." [Id.].  When asked why the Notes were out [on his desk] during his deposition, Pollock responded that he did not know it was an issue, that he was in his office, that he has "stuff around him that's in his office", and "it was common for him to have things in his office." [Id. at 159:18-160:1].  Pollock explained that his deposition testimony was not based on what was in the Notes but was in accordance with the documents the EEOC presented and that he responded to "in great detail." [Id. at 160:1-3].  Pollock also noted that the parties had "never reviewed these particular documents (the Notes)" [during his deposition].  [Id. at 3].  Because Plaintiff EEOC failed to sufficiently demonstrate that Pollock used the Notes to refresh his memory during his deposition there was no waiver of Pilot's claims regarding privilege and work product.[4]  Therefore, the Court is not inclined to infer that because the Notes were simply present on Pollock's desk, the document provided a basis for his testimony and should be disclosed.  Accordingly, Rule 612(a)(1) is inapplicable to compel production of the Notes.

Regarding the second condition, that the witness used the writing to refresh his recollection before his deposition for the purpose of testifying, the EEOC's request for

---

[4] To the extent that the EEOC's counsel alleges he noticed that Pollock's eyes would look away multiple times in the same direction when answering, the transcript of the deposition does not indicate that Pollock was looking away or at a document at any time.

the Notes is due to be denied under Rule 612(a)(2) as well.  Although the EEOC argues

production of the Notes is warranted under Rule 612(a)(2) because Pollock used the

Notes to refresh his memory prior to testifying and justice requires the production, the

Court disagrees.  At best, it is unclear from Pollock's deposition testimony whether he

used the Notes to refresh his memory before testifying.  The EEOC points to Pollock's

testimony that he received and *reviewed* the Notes prior to his deposition.  But, courts

"have held that simply looking at a document is not sufficient to trigger Rule 612."

Medtronic Xomed, Inc., 2006 WL 786425, at *6 (citing Suss, 212 F.R.D. at 165 (stating

that movants failed to demonstrate that witnesses relied upon documents in question

and that "'relied upon' means more than simply reviewing"); In re Comair Disaster

Litig., 100 F.R.D. at 353 ("[N]ot 'every time a witness looks at any document in

preparation for trial, that document should be disclosed to the other side.'") (internal

citations omitted)).  Instead, Pollock was required to *rely* on the Notes, but his

deposition testimony completely undermines that finding.  As previously discussed, it

is clear from Pollock's deposition that he received and read the Notes a week before

his deposition and that the Notes were present on his desk during his deposition.

However, there is nothing in the record to show that Pollock brought the document

with him and physically placed the Notes on his desk on the day of his deposition.

Importantly, there is nothing to show that the witness relied on the Notes to refresh or

enhance his memory prior to or even on the day of his deposition.  Further, Pollock testified that he did not review or use the Notes to refresh his recollection during his deposition.  [Pollock Dep. at 157:1, 5, Doc. 92-2].  Even if Pollock looked at or reviewed the Notes at some point prior to his deposition, the Court finds that none of Pollock's testimony or his conduct during the deposition can be construed as constituting a waiver of the protections afforded the privileged document.

As noted above, the burden is on the party seeking production of a document pursuant to Rule 612 to show the rule's applicability.  Here, Plaintiff has not met that burden.  Pollock was within the zone of privilege when he initially received and reviewed the Notes.  There was no direct testimony elicited as to whether the Notes impacted in any way Pollock's testimony.  As earlier noted, Pollock provided very detailed responses to the EEOC's questions based, in large part, on exhibits presented by the EEOC.  The record is devoid of any reference that shows Pollock used the Notes to refresh his memory or relied on the Notes for the purpose of testifying, or that the Notes had any impact on Pollock's testimony.  Thus, the EEOC's showing falls well short of establishing that the contested document had an impact upon the testimony of the witness and should be disclosed.

And in the Court's view, the EEOC failed to satisfy the third condition, whether the adverse party is entitled to the writing in the interests of justice.  Having determined

that the document at issue is privileged, a court must perform a balancing test of the competing interests at stake.  That being the case, the undersigned has weighed the EEOC's need for effective cross-examination and impeachment of Pollock against Pilot's need to protect its privileged materials and finds that justice does not require that the Notes be produced.  Obviously the EEOC is, by necessity, forced to speculate as to what is contained in the Notes.  However, the Court's thorough review of Pollock's deposition testimony and an *in camera* review of the Notes reveals that the Notes would only be marginally, if at all, useful for the purposes of cross-examination and impeachment.  "[T]he work product privilege need not be invaded when the benefits of disclosure would prove to be minimal, at best." TIG Ins. Co. v. United Nat'l Ins. Co., No. 05-60672-CIV, 2006 WL 8431479, at *8 (S.D. Fla. June 23, 2006).  In contrast, nothing about the Notes convinces the Court that an attorney-client communication protected by the work product doctrine should be breached here.  It appears that the Notes reflect counsel's work product which the law has long been reluctant to require to be disclosed.  It also appears to the Court, taking the totality of the information before it, that the document was created using information which already has been provided to the EEOC.  Thus, there is no nothing about the document to indicate that the interest of justice requires its disclosure.  Accordingly, the undersigned finds that Plaintiff is not entitled to production of the Notes pursuant to

Rule 612.

Lastly, regardless of Rule 612, production of the Notes is not warranted because the EEOC has not shown that Pollock relied on or testified using counsel-prepared notes.  As discussed at length above, the most the Court can conclude is that Pollock reviewed the Notes provided to him by Pilot's counsel sometime before his deposition – not that he used or relied on the Notes as support for his deposition testimony.

## III.   <u>CONCLUSION</u>

In sum, Defendant Pilot's Motion [Doc. 95] to Compel is **DENIED**.  Plaintiff EEOC's Motion [Doc. 97] for a Protective Order is **GRANTED** and the subpoena issued to EEOC Investigator Maddox is **QUASHED**.  Lastly, Plaintiff EEOC's request for the privileged and confidential Notes is **DENIED**.

**SO ORDERED**, this  16  day of June, 2023.


_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE